UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL J. LAWRENZ,

          **Plaintiff,**

v.                                                    Case No. 22-CV-1473

KATRINA BRUCKER, *et. al.*,

          **Defendants.**

---

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

---

Plaintiff Michael J. Lawrenz, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. (Docket # 1.) Lawrenz was allowed to proceed on an Eighth Amendment deliberate indifference to medical needs claims against the defendants as well as related state law claims. (Docket # 8.) On December 18, 2023, defendants Denise Bonnet, Cindy Buchanan, and Dr. Justin Ribault (the State Defendants) moved for partial summary judgment on the grounds that Lawrenz failed to exhaust his administrative remedies to all claims except for the claim against Buchanan and Dr. Ribault for delaying medical treatment in Fall 2020. (Docket # 41). Defendant Dr. Adeyemi Fataki moved for summary judgment on the grounds that Lawrenz failed to exhaust his administrative remedies as to the claims against him. (Docket # 46.) Defendant Katrina Brucker moved to join Dr. Fataki's motion for summary judgment (the Jail Defendants), (Docket # 52), which the court granted on January 24, 2024. As explained below, the State Defendants' motion for partial summary judgment on exhaustion grounds is granted in part and denied in part, and Dr. Fataki's motion for summary judgment is granted.

## PRELIMINARY MATTERS

Dr. Fataki argues that Lawrenz failed to follow Federal Rule of Civil Procedure 56 and Civil Local Rule 56 when responding to his motion for summary judgment because he did not respond to Dr. Fataki's proposed findings of fact and instead submitted a short affidavit. (Docket # 60 at 2–3.) As such, Dr. Fataki argues the court should construe their proposed findings of fact as unopposed.

District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Lawrenz's response materials do not formally comply with the rules, they contain sufficient facts and evidence allowing the court to rule on Dr. Fataki's summary judgment motion. Lawrenz also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for the purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Lawrenz's submissions where appropriate in deciding defendants' motion.

## FACTS

1. *Facts of the Underlying Case*

On July 24, 2016, Lawrenz was booked into the Outagamie County Jail. (Docket # 50, ¶ 3.) On August 30, 2016, Lawrenz, while suffering a mental breakdown, swallowed a spork. (*Id.*, ¶ 4.) Lawrenz alleges that Dr. Fataki and Brucker failed to treat him after he swallowed the spork, including ignoring an x-ray showing the spork. (*Id.*, ¶ 7.)

On September 22, 2016, Lawrenz transferred to Dodge Correctional Institution (Dodge) (Docket # 1, ¶ 34.) He states he told staff he swallowed a spork while at the Jail. (*Id.*, ¶ 35.) Bonnet knew that he had swallowed the spork, but after the x-ray was inconclusive, she decided not to treat Lawrenz further. (*Id.*, ¶ 36.)

Sometime between September 2016 and August 28, 2020, Lawrenz transferred to Columbia Correctional Institution (Columbia) (*Id.*, ¶ 45.) On August 28, 2020, he complained of severe stomach pains. (*Id.*) Lawrenz states he had an appointment with Dr. Ribault scheduled for September 11, 2020, but it was cancelled. (*Id.*, ¶ 46.) Several other appointments were set and then cancelled. (*Id.*) Lawrenz also informed Buchanan in September 2020 that he believed his stomach issues were caused by the spork he swallowed in 2016, but she refused to believe him, instead telling him he was suffering from kidney stones. (*Id.*, ¶ 49.) Still, Buchannan said he would see Dr. Ribault within two days. (*Id.*)

Several weeks passed, and Lawrenz finally saw Dr. Ribault on October 27, 2020. (*Id.*, ¶ 55.) He told Dr. Ribault that he believed his stomach pains were from swallowing a spork in 2016, but Dr. Ribault said that "was unlikely." (*Id.*) Even though Lawrenz subsequently had a CT scan in December 2020, and continued to suffer stomach issues, Dr. Ribault insisted that his issues were likely from kidney stones. (*Id.*, ¶¶ 58–63.) On March 3, 2021, Lawrenz was taken offsite to have a second CT scan, which ended with him going to the emergency room because the CT scan showed a spork in his intestine. (*Id.*, ¶¶ 65–69.) The ER doctors indicated that the first CT scan taken in December 2020 also showed a spork, which Lawrenz asserts Dr. Ribault ignored. (*Id.*) Lawrenz finally had the spork surgically removed on March 7, 2021. (*Id.*, ¶¶ 70–71.) Despite having the spork removed, because it was in his system so long, he sustained a large abscess in his intestine. (*Id.*)

2. *Exhaustion Attempts at Outagamie County Jail*

The Jail Defendants assert that while at the Outagamie County Jail, Lawrenz did not submit a grievance about the lack of medical care provided by Dr. Fataki or Brucker. (Docket # 50, ¶ 21.) Lawrenz states that he did not file a grievance because of his conversation with Brucker during a medical appointment. (Docket # 62, ¶ 1.) At the appointment, Lawrenz stated he wanted to go to the hospital, and Brucker responded that the doctor would have to make that decision. (*Id.*) Lawrenz then asked "if filing a complaint would allow him to go to the hospital." (*Id.*) Brucker "stated that there was no need for a complaint because she would speak to the Doctor for the Plaintiff and would be relaying the subject of her and Plaintiff's conversation to him." (*Id.*) Lawrenz also states that he never received the Jail handbook and cites his affidavit as proof. (Docket # 88-1, ¶ 11; Docket # 89, ¶ 1.)

3. *Exhaustion Attempts at Columbia*

The State Defendants assert that Lawrenz filed four potentially relevant inmate complaints: CCI-2020-17522; CCI-2021-5485; CCI-2021-5486; and CCI-2021-5488. CCI-2020-17522 was received by the Inmate Complaint Examiner ("ICE") on October 2, 2020. (Docket # 44-2 at 11.) Lawrenz complained that his appointments for his stomach issues kept being cancelled and that he had been trying to see a doctor since his arrival at Columbia in August 2020. (*Id.*) In the section of the form where he was asked how he attempted to informally resolve his issue, he described how he spoke to the Health Services Unit ("HSU") manager and that he wrote HSU several requests asking to be seen. (*Id.*) The ICE affirmed the complaint. (*Id.* at 2.)

Inmate Complaint CCI-2021-5485 was received by the ICE on March 2, 2021. (Docket # 44-3 at 8.) Lawrenz complains that he was not getting the medicine the hospital prescribed

4

him after his surgery for removing the spork. (*Id.*) The ICE rejected the inmate complaint because "pursuant to DOC 310.10(6)(3) . . . the inmate does not provide sufficient information to support a complaint." (*Id.* at 2.) The ICE also stated that the grievance was returned to Lawrenz with instructions to "submit copies of correspondence showing he followed chain of command." (*Id.*) On April 21, 2021, Lawrenz appealed his rejection. (*Id.* at 11.) In his appeal, he notes that he did not receive his rejected complaint until April 12, 2021. (*Id.*) He also explains that the unit was out of the appropriate form. (*Id.*) Then, he describes the efforts he took to informally resolve his issue, stating that he wrote HSU, but never got a response. (*Id.*) Lawrenz also states in his affidavit in response to the State Defendants' motion for summary judgment on exhaustion grounds that he requested the forms from the Unit Manager on several occasions, and that he was told he would have to wait until the next week's "supply pass." (Docket # 67, ¶¶ 2–4.) He also notes that he explicitly states this in his appeal. (*Id.*, ¶ 5.) Nevertheless, the appeal was denied as untimely. (Docket # 44-3 at 3–4.)

Inmate complaint CCI-2021-5485 was initially received by the ICE on March 22, 2021. (Docket # 44-4 at 8.) Lawrenz complains that HSU staff did not properly treat his stomach pain for over seven months until he was finally sent to the hospital. (*Id.*) When asked what he did to informally resolve the issue, he explained that he trusted his doctor and did not know there was an issue until he had to have surgery. (*Id.*) The ICE returned the inmate complaint, stating "Inmate does not provide sufficient information to support complaint." (*Id.* at 2.) Specifically, Lawrenz needed to resubmit this complaint with "copies of correspondence showing he followed chain of command." (*Id.*) In the letter returning the inmate complaint, Lawrenz was told to contact HSM Buchanan and "wait a reasonable amount of time for a reply before you resubmit your complaint." (*Id.* at 10.) When Lawrenz resubmitted his

5

complaint on April 8, 2021, he explicitly stated that he "attempted to satisfy all the examiners requests . . . I wrote HSM Buchanan 3 separate HSRs . . . I have gotten no response to any of them. I also requested to review my medical records" but he was not given access. (*Id.* at 9.) The ICE rejected his inmate complaint because he did not provide the documentation showing he talked to Buchanan. (*Id.* at 2.) Then, on April 21, 2021, when Lawrenz appealed his rejection, he explained that he did not get notice of the rejection until April 12, 2021 and then he had to wait until the forms became available. (*Id.* at 11.) He further explained that he tried to comply with the requirement to follow the chain of command but never got a response. (*Id.*) The reviewing authority dismissed the appeal for being untimely. (*Id.* at 6.) Lawrenz again further explains in his affidavit that he tried to get forms as soon as possible but had to wait. (Docket # 67, ¶¶ 2–5.)

CCI-2021-5488 was initially received on March 22, 2021. (Docket # 44-5 at 8.) In it, Lawrenz states that it took over four years for the DOC to finally have the spork removed from his body. (*Id.*) When asked how he informally resolved the issue, Lawrenz stated, "I wrote the HSU manager numerous times about the extreme pain I was in." (*Id.*) The ICE returned the inmate complaint, stating "Inmate does not provide sufficient information to support complaint." (*Id.* at 2.) Specifically, Lawrenz needed to resubmit this complaint with "copies of correspondence showing he followed chain of command." (*Id.*) In the letter returning the inmate complaint, Lawrenz was told to contact HSM Buchanan and "wait a reasonable amount of time for a reply before you resubmit your complaint." (*Id.* at 10.) When Lawrenz resubmitted his complaint on April 8, 2021, he explicitly stated that he "attempted to satisfy all the examiners requests . . . I wrote HSM Buchanan 3 separate HSRs . . . I have gotten no response to any of them. I also requested to review my medical records" but he was

6

not given access. (*Id.* at 9.) The ICE rejected his inmate complaint because it was "previously addressed with prior use of ICRS." (*Id.* at 2.) Then, on April 21, 2021, when Lawrenz appealed his rejection, he explained that he did not get notice of the rejection until April 12, 2021 and then he had to wait until the forms became available. (*Id.* at 11.) He further explained that he has been trying to complain about the spork incident. (*Id.*) The reviewing authority dismissed the appeal for being untimely. (*Id.* at 5.) Lawrenz again further explains in his affidavit that he tried to get forms as soon as possible but had to wait. (Docket # 67, ¶¶ 2–5.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*,

7

583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*1.   Applicable Law and Procedure on Exhaustion*

This case is governed by the Prison Litigation Reform Act ("PLRA"). The PLRA states in part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner

8

Case 2:22-cv-01473-NJ    Filed 09/06/24    Page 8 of 16    Document 106

must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018).

### 1.1 Outagamie County Jail Exhaustion Procedure

When a prisoner enters the Outagamie County Jail, he is provided a copy of the Inmate Handbook. (Docket # 50, ¶ 11.) The Inmate Handbook contains the policy and procedure for inmate grievances. (*Id.*, ¶ 12.) A prisoner is required to file a grievance within seven calendar days of the event giving rise to the grievance. (*Id.*, ¶ 13.) The grievance can only address one issue and must be about the prisoner's experience with health care, welfare, or facility operations and services. (*Id.*, ¶¶ 14–15.) Once accepted, the grievance is investigated and a decision returned to the prisoner within 14 calendar days. (*Id.*, ¶ 17.) If the grievance is denied, an appeal may be filed with the Jail administrator within seven calendar days. (*Id.*, ¶ 18.) If a prisoner is released from the Jail during the pendency of a grievance, the prisoner has seven calendar days from the date of release to request a written response. (*Id.*, ¶ 19.)

### 1.2 The Wisconsin Department of Corrections Exhaustion Procedure

For institutions that are a part of the Department of Corrections, "[a]n inmate may use the Inmate Complaint Review System (ICRS) to raise issues regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code § DOC 310.06(1). A prisoner must "file a complaint within 14 days after the occurrence giving rise to the complaint." Wis. Admin. Code § DOC 310.07(2). A complaint "may contain only one clearly identified issue." Wis. Admin. Code § DOC 310.07(5).

The ICE then may accept the complaint and make a recommendation or reject the complaint for one of the ten reasons listed in § DOC 310.10(6) within 30 days from the date of receipt, including where "the inmate does not provide sufficient information to support a complaint." Wis. Admin. Code § DOC 310.10 (2), (9). If the ICE rejects the complaint, an inmate may appeal the rejection within 10 days to the appropriate reviewing authority "who shall only review the basis for the rejection of the complaint." Wis. Admin. Code § DOC 310.10(10). The ICE may also return a defective complaint and allow an inmate to correct the defects and resubmit within 10 days. Wis. Admin. Code § DOC 310.10(5). The ICE may waive any of the requirements for filing a complaint for "good cause." Wis. Admin. Code § DOC 310.07(11).

When the ICE makes a recommendation, the Reviewing Authority shall make a decision within 15 days. Wis. Admin. Code § DOC 310.11(1). If an inmate does not receive a decision within 45 days after the date of acknowledgement by the ICE, he may directly appeal to the CCE. Wis. Admin. Code § DOC 310.11(3). Otherwise, an inmate may appeal a reviewing authority's decision to the CCE within 14 days after the date of the decision. Wis. Admin. Code § DOC 310.12(1). The CCE then "shall recommend that the reviewing authority decision be affirmed or dismissed, in whole or in part, and send its recommendation to the secretary [of the DOC] within 45 days of receipt of the appeal." Wis. Admin. Code § DOC 310.12(9). The secretary shall make a decision within 45 days following the receipt of the CCE's recommendation. Wis. Admin. Code § DOC 310.13(1). "If the inmate does not receive the secretary's written decision within 90 days of the date of receipt of the appeal in the CCE's office, the inmate shall consider the administrative remedies to be exhausted." Wis. Admin. Code § DOC 310.13(4).

2.  *Application to this Case*

    2.1   The Jail Defendants

The Jail Defendants argue that Lawrenz failed to exhaust his administrative remedies for the claims against them because he did not file a grievance about the care they provided. Lawrenz asserts that he never received the Jail handbook, and that Brucker told him he did not have to file a grievance to receive healthcare. It is well established that "[i]f administrative remedies are not 'available' to an inmate, then an inmate cannot be required to exhaust." *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (quoting *Kaba v. Stepp*, 458 F.3d678, 684 (7th Cir. 2006)). Lawrenz argues that remedies were unavailable because he did not know he needed to file a grievance or the procedure to do so as he was never given the Jail handbook.

However, Lawrenz's own version of the facts contradicts his contention that he did not know he needed to file a grievance. Lawrenz states that he asked Brucker whether he could file a grievance in order to be sent to the hospital, which demonstrates that he knew a grievance procedure existed. Additionally, Lawrenz's reliance on Brucker's assertion that he did not need to file a grievance in order to be sent to the hospital does not render the process unavailable for any other complaints about medical care. In other words, all Brucker stated was that a grievance was unnecessary to obtain a hospital appointment. She did not tell Lawrenz that he did not need to file a grievance about his other concerns regarding his medical care. "No one can know whether administrative requests will be futile," so a prisoner has an obligation to file a grievance even if he has doubts whether it is necessary. *Perez* v. *Wisconsin Dept. of Corr.*, 182 F.3d 532, 536–37 (7th Cir. 1999). Here, at most, Lawrenz establishes that he was told that a grievance would not be necessary to obtain a hospital appointment. However, Lawrenz's own conduct shows that he knew there was a grievance

process. Additionally, it is undisputed that Lawrenz did not file *any* grievances related to the medical care (or lack thereof) that he received.

In short, Lawrenz does not establish that the Jail grievance process was unavailable or that he attempted to file a grievance related to his medical care. As such, no reasonable factfinder could conclude that Lawrenz exhausted his administrative remedies as to the claims against the Jail Defendants. Summary Judgment is granted in their favor, and they are dismissed.

### 2.2 The State Defendants

There are two sets of State Defendants—Bonnet, who worked at Dodge, and Dr. Ribault and Buchanan, who worked at Columbia. As to Bonnet, Lawrenz offered no evidence that he attempted to exhaust his administrative remedies for his claim against her. The four relevant inmate complaints all discuss treatment that he received at Columbia, and while there is a vague reference to the fact that he has been suffering since 2016, there is nothing to put Dodge on notice that Bonnet failed to provide him adequate healthcare. *See Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) ("[A]n inmate's complaint will suffice for exhaustion purpose if it provides notice to the prison of the nature of the wrong for which redress is sought.") (citations omitted). Summary judgment is granted in Bonnet's favor, and she is dismissed.

As for Dr. Ribault and Buchanan, they acknowledge that Lawrenz fully exhausted his administrative remedies as to his claim regarding their delay in providing him medical care in the fall of 2020, but they argue that Lawrenz did not properly exhaust his remedies as to the claim that they failed to properly diagnose and treat his stomach issues—namely that the spork was the cause of his issues. Specifically, they assert that CCI-2020-17522 is the only

inmate complaint that was properly submitted and investigated, and that inmate complaint concerned only the delay in treatment. As to the other three inmate complaints, the defendants do not dispute that they substantively address Lawrenz's claims that they failed to properly diagnose and treat his stomach issues. Instead, they argue that because Lawrenz did not properly follow the process by attempting informal resolution and timely appealing the rejection, he failed to exhaust those claims. Lawrenz argues that the process was unavailable to him and that he tried in good faith to fix the issues with his returned complaints. He also argues that his appeals of the rejections were improperly rejected.

"Prison officials may not take unfair advantage of the exhaustion requirement, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Kaba*, 458 F.3d at 684 (quoting *Dole*, 438 F.3d at 809). For the three returned/rejected inmate complaints, the ICE and reviewing authority created a situation where they "shroud[ed] the prisoner in a veil of ignorance" and the defendants are using their actions to now try to avoid liability. *Hernandez*, 814 F.3d at 842.

Lawrenz's inmate complaints were initially returned with instructions to "submit copies of correspondence showing he followed a chain of command." (Docket # 44-3 at 2.) The court notes that Lawrenz was grieving an injury he already sustained and damage he already incurred. What purpose could an attempt to informally resolve the situation serve? Arguably, under *White v. Bukowski*, 800 F.3d 392 (7th Cir. 2015), he would not need to use the grievance process to exhaust in this situation. In *White*, the Seventh Circuit noted that "[t]he purpose of a prisoner's filing a grievance is to obtain a change of some sort—to obtain better medical care, for example," so where a prisoner suffers an injury that has already

13

concluded and the damage already done, "what good would it have done her to file a grievance?" *Id.* at 394–95.

Similarly, here, requiring Lawrenz to speak with Buchanan to attempt to informally resolve the situation pursuant to the administrative code and then provided documentation is pointless. While courts generally find that grievances that were returned and/or rejected for procedural reasons demonstrate that a plaintiff failed to exhaust his remedies, that is not always the case. Where "a procedural requirement at issue prevents him from obtaining 'a meaningful opportunity' to present his grievance'" then the requirement is "invalid on its face if it is nothing more than 'an additional procedural technicality' or an arbitrary barrier to an inmate's filing of a lawsuit." *Henderson v. Aldana*, Case No. 20-cv-555-JPS, 2023 WL 4868568, at *6 (E.D. Wis. July 31, 2023) (quoting *Jones v. Frank*, No. 07-CV-141-BBC, 2008 WL 4190332, at *3 (W.D. Wis. Apr. 14, 2008)).

Also, when he resubmitted the returned appeals, Lawrenz explained that he attempted to resolve the situation with Buchanan but she did not respond. Nevertheless, the ICE rejected the complaints for failing to "follow the chain of command." This is an arbitrary rejection that serves as a barrier to Lawrenz's lawsuit.

When Lawrenz tried to appeal the rejections, they were denied because they were apparently untimely. Lawrenz's explanation, included in all three of his appeals, is consistent—he did not receive notice of the rejection until April 12, 2021, and he had no access to the appropriate forms.

However, even if Lawrenz's appeals were clearly untimely, he still offered a valid reason in the appeal for their untimeliness that was ignored by the reviewing authority—he did not have the proper forms. His explanation for the lack of forms is not a "bald

14

assertion"—in the appeal itself he provided detail about what he did to try to obtain the appeal form, and in his affidavits submitted in support of his response, he details who he talked to in order to get a form; the amount of times he requested the form; and the reason the forms were delayed (because he had to wait for "supply pass"). (Docket # 67, ¶¶ 2–4.) This is sufficient evidence to demonstrate that his inability to timely file an appeal of the rejection renders the process unavailable. *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (detailing the amount of evidence a prisoner needs to show that he made a good faith effort to obtain the forms and finding that "[i]f prison employees refuse to provide inmates with those forms when requested, it is difficult to understand how the inmate has any available remedy").

Thus, the cycle of returning and then rejecting Lawrenz's inmate complaints, without acknowledging that the requirements placed on Lawrenz did not make sense and without acknowledging that Lawrenz had good cause for both not trying to informally resolve the issue and for filing the appeals late, rendered the exhaustion process unavailable to Lawrenz. Summary judgment as to the claims against Dr. Ribault and Buchanan is denied.

## CONCLUSION

Because Lawrenz did not exhaust his administrative remedies against Dr. Fataki and Brucker, the court grants their motion for summary judgment on exhaustion grounds. Dr. Fataki and Brucker are dismissed. The evidence also shows that Lawrenz did not exhaust his administrative remedies against Bonnet. The court grants summary judgment in her favor and she is dismissed. However, Dr. Ribault and Buchanan did not demonstrate that the grievance process was available to Lawrenz. Thus, as to Dr. Ribault and Buchanan, the State

Defendants' motion for summary judgment on exhaustion grounds is denied. The court will enter a scheduling order at a later date.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Jail Defendants' motion for summary judgment (Docket # 46) is **GRANTED**. The Jail Defendants are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the State Defendants' motion for partial summary judgment on exhaustion grounds (Docket # 41) is **GRANTED in part and DENIED in part.** Summary judgment in favor of Bonnet is **GRANTED**, and she is **DISMISSED without prejudice**. Summary judgment as to Dr. Ribault and Buchanan is **DENIED**.

Dated at Milwaukee, Wisconsin this 6th day of September, 2024.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge