**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MICHAEL J. LAWRENZ,**

**Plaintiff,**

**v.** **Case No. 22-CV-1473**

**DR. JUSTIN S. RIBAULT, *et al.***

**Defendants.**

---

**DECISION AND ORDER ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

---

Michael J. Lawrenz, who is incarcerated and representing himself, sues Dr. Justin S. Ribault and Cindy Buchanan under 42 U.S.C. § 1983, alleging they were deliberately indifferent to his stomach pain in violation of the Eighth Amendment. The parties filed cross-motions for summary judgment, which are fully briefed and ready for a decision. (Docket # 131; Docket # 135.) For the reasons stated below, the defendants' motion for summary judgment is granted, and Lawrenz's motion for summary judgment is denied.

## FACTS

*Treatment of Lawrenz's Abdominal Pain*

When Lawrenz arrived at Columbia Correctional Institution on August 28, 2020, Dr. Ribault was assigned as his primary care provider. (Docket # 179, ¶ 36.) On August 27, 2020, one day prior to transferring to Columbia from Waupun Correctional Institution, Lawrenz had a Health Services Unit ("HSU") appointment wherein he told the nurse that in 2016 he swallowed a spork while in county jail, which caused him "intermittent abdominal and lower back pain" because he "never passed the object." (*Id.*, ¶ 38.) Lawrenz stated that when he

experiences abdominal pain, "it goes from 'not there to excruciating in 3 seconds' and that laying down relieves the abdominal pain." (*Id.*, ¶ 39.) Lawrenz was not experiencing pain during the appointment. (*Id.*)

On August 28, 2020, after arriving at Columbia, Nurse Fitzpatrick conducted a medical intake screening with Lawrenz. (*Id.*, ¶ 40.) Lawrenz states that during this screening, Fitzpatrick told him he noted in his medical records that Lawrenz had previously swallowed a spork which was causing him pain, and Fitzpatrick also noted that the nurse at Waupun had put in a referral to see the provider. (*Id.*)

On September 16, 2020, Lawrenz submitted a Health Services Request ("HSR") stating that he had "been waiting to see the Dr. since I come here from WCI. Fri. 9/11 I had a WC appt which I was never called for. Then on Mon. they canceled my appt. Now I haven't had one the last 2 days. I REALLY need to see the Dr ASAP about this abdominal pain I'm having." (*Id.*, ¶ 43.) A nurse responded to Lawrenz's HSR by telling him he had an appointment scheduled with Dr. Ribault later that week. (*Id.*) The defendants assert that Dr. Ribault did not see the HSR before the nurse responded to it, nor did he respond to it. (*Id.*)

On September 23, 2020, Lawrenz submitted an HSR asking to be seen by a doctor on Thursday or Friday of that week because "this pain is getting unbearable." (*Id.*, ¶ 44.) A nurse responded to the HSR, telling Lawrenz he had a doctor's appointment scheduled the next week. (Docket #132, ¶ 44.)

On September 29, 2020, Lawrenz was examined by nurse Gardener for abdominal pain that had been worsening for the past two months. (Docket #179, ¶ 45.) Lawrenz "reported pain at a 4 out of 10 at that time with a burning, stabbing pain, and some burning with urination." (*Id.*) Gardener administered a urine test which later came back negative. (*Id.*;

Docket #137, ¶ 12.) Gardener also informed Lawrenz that Dr. Ribault was made aware of the results. (Docket #137, ¶ 12.)

Also on September 29, 2020, Dr. Ribault reviewed Lawrenz's chart, noting Lawrenz's abdominal pain and that his urine analysis was normal. (Docket #179, ¶ 46.) He also noted that Lawrenz reported that he believed his periodic abdominal pain was caused by ingesting "foreign bodies that 'never passed.'"(*Id.*) After reviewing Lawrenz's chart, Dr. Ribault placed an order for Lawrenz to have an ultrasound and x-ray of his abdomen. (*Id.*, ¶ 47.)

On September 30, 2020, Lawrenz submitted an HSR stating that "you guys keep canceling my Dr appts for me to be seen for my abdominal pain." (*Id.*, ¶ 48.) He also stated that his pain "is unbearable!" (*Id.*) A nurse responded to the HSR noting that Dr. Ribault had reviewed the complaints Lawrenz made to nursing and his medical history and as a result ordered an ultrasound and x-ray of his abdomen. (*Id.*)

On October 16, 2020, Lawrenz submitted an HSR stating "I'm writing to inform you that I am still experiencing the same extreme abdominal pain that I reported when arriving here on 8/28/20! I still have not been seen by the Dr. which I was told I would within a few weeks." (*Id.*, ¶ 50.) A nurse responded informing Lawrenz that a referral had been made for him to see the provider. (*Id.*)

On October 20, 2020, Lawrenz had an x-ray, which showed "non-obstructive bowel gas pattern," indicating "that there was no blockage or obstruction in the intestines." (*Id.*, ¶ 51.) Lawrenz asserts that he later learned that the "spork had grown into his duodenum," but he believes that did not show up on the x-ray because the spork, being plastic, was "non-radiopaque." (*Id.*) Dr. Ribault states that there are a lot of factors behind whether a plastic object would be visible on an x-ray, and he defers to the radiologist to determine whether such

an object was visible. (*Id.*, ¶ 52.) Lawrenz further asserts that Dr. Ribault did not explicitly inform the radiologist to look for the plastic spork. (*Id.*)

Also on October 20, 2020, Lawrenz had an ultrasound of his abdomen, which resulted in a diagnosis of mild right hydronephrosis, meaning "that the right kidney had some swelling due to a buildup of urine, but the swelling was not severe." (*Id.*, ¶¶ 53–54.) The report showed that Lawrenz did not have kidney stones. (*Id.*) After reviewing the ultrasound report, Dr. Ribault ordered a CT scan and labs. (*Id.*, ¶ 55.) Lawrenz notes that the order for the CT scan did not contain instructions to look for the plastic spork. (*Id.*)

On October 27, 2020, Dr. Ribault examined Lawrenz. (Docket #137, ¶ 23.) Lawrenz told Dr. Ribault that he was concerned the spork was still inside him, and according to Lawrenz, Dr. Ribault responded that he was aware of the spork from reviewing his medical records. (*Id.*, ¶ 23.) During that appointment, Dr. Ribault told Lawrenz that to address his abdominal pain, there was an order for a CT scan pending, and Dr. Ribault explained that the result of the CT scan would "give useful information about his abdominal pain." (Docket #179, ¶ 56.) Dr. Ribault also noted that the pain was "intermittent and that the pain currently is not present." (*Id.*) Lawrenz further reported at that visit that he had a normal appetite and no nausea, vomiting, constipation, or diarrhea. (*Id.*)

On November 13, 2020, Lawrenz submitted an HSR inquiring whether the upcoming "institutional slowdown" would affect the date of his upcoming CT scan. (*Id.*, ¶ 59.) A nurse responded indicating that his CT scan was still scheduled, but it was unknown whether it would be delayed. (*Id.*)

On November 22, 2020, Lawrenz tested positive for COVID-19, which impacted the date of his CT scan. (*Id.*, ¶¶ 60–61.) On November 24, 2020, Lawrenz submitted an HSR

asking for his CT scan to be "rescheduled ASAP" once he was done with COVID quarantine. (*Id.*, ¶ 61.)

Lawrenz states that he left his job early because of abdominal pain on December 14 and December 15, 2020, and spent all day December 16, 2020, in bed due to pain. (Docket #137, ¶ 25.) On December 15, 2020, he also spoke to Fink, his unit manager, about the delays in his health care, and sent a follow-up request slip to Fink later that night. (*Id.*, ¶ 27.) Lawrenz states that Fink informed HSU of his pain. (Docket #138, ¶ 17.)

Lawrenz had the CT scan on December 17, 2020, at Divine Savior Hospital. (Docket #179, ¶ 62.) Lawrenz notes that the CT scan orders did not include instructions to look for the spork. (Docket #137, ¶ 28.) After he returned from the hospital, that same day, Lawrenz submitted an HSR requesting the CT tech look "for plastic foreign objects." (Docket #138-1 at 46.) The nurse responded, "Noted." (*Id.*) The findings of the CT scan showed: "moderate right hydronephrosis and right uretereclasis"; "moderate constipation but no evidence of a bowel obstruction"; and "mild distal descending and sigmoid diverticulosis but no evidence of acute diverticulitis." (Docket #179, ¶ 62.)

On December 27, 2020, Lawrenz submitted an HSR stating that he was told he'd be scheduled for a follow-up for his CT scan, but he had yet to be scheduled for that appointment. (*Id.*, ¶ 63.) A nurse responded that Lawrenz had an appointment scheduled. (*Id.*)

On January 2, 2021, Lawrenz submitted an HSR stating that he wanted "to make sure this lockdown is not going to slow down my follow-up appointment from my CT scan. I'm at my limit dealing with the pain." (*Id.*, ¶ 64.) A nurse responded informing Lawrenz that "the situation was being reviewed on a daily basis" and requested his patience. (*Id.*)

On January 5, 2021, Dr. Ribault sent Lawrenz a memo informing him he had a small kidney stone that should pass on its own. (Docket #149, ¶ 35.) That same day, Dr. Ribault placed an order for Lawrenz to have a CT scan of his abdomen and pelvis. (Docket #179, ¶ 65.) Lawrenz notes that the order did not include information about the spork. (*Id.*) On January 6, 2021, a nurse sent Dr. Ribault a message asking why Lawrenz was being sent for another CT scan, and Dr. Ribault responded that he wanted to recheck Lawrenz's hydronephrosis, which is swelling of the kidneys. (*Id.*, ¶¶ 66–67.)

Also on January 6, 2021, Lawrenz wrote HSU asking why he had not had his CT scan follow-up appointment, and a nurse wrote back that he had an appointment scheduled for next week. (*Id.*, ¶ 36.) When he was not called for an appointment the following week, on January 17, 2021, he wrote HSU again asking after his follow-up appointment. (*Id.*, ¶ 37.)

On January 22, 2021, Dr. Ribault saw Lawrenz and Lawrenz reported that his abdominal pains fluctuates but "was stable." (*Id.*, ¶ 68.) Lawrenz states he also told Dr. Ribault that he believed the cause of his pain to be the spork, but Dr. Ribault was not taking him seriously. (*Id.*) Dr. Ribault opined that he believed the chronic abdominal pain was a result of constipation. (*Id.*, ¶ 69.) Dr. Ribault also informed Lawrenz in writing that his CT scan showed "moderate constipation" and that "plastic can be seen on CT." (Docket #149, ¶ 39.)

On January 25, 2021, Lawrenz submitted an HSR asking for clarification on Dr. Ribault's memo; specifically, whether Dr. Ribault was stating that CT scans in general show plastic or whether Lawrenz's CT scan showed the spork. (Docket #179, ¶ 71.) A nurse responded that Dr. Ribault thought it was possible to see plastic on a CT scan, but there was no visible plastic on Lawrenz's CT scan. (*Id.*) Lawrenz notes that when UW Health Radiology

compared the CT scan he received on March 3, 2021, to the CT scan conducted on December 17, 2020, the radiologist determined that the spork was in fact visible on the December 17, 2020, scan. (Docket #138-1 at 6.)

Also on January 25, 2021, Lawrenz submitted an HSR directed to Buchanan as "HSU Manager" wherein he stated that he was writing in order to comply with the inmate grievance process, and informing her that he had extreme abdominal pain that he did not believe was caused by constipation or kidney stones. (Docket #179, ¶ 72.) He requested to see a gastrointestinal specialist specifically about the spork possibly still being inside him. (*Id.*) Buchanan responded to the HSR informing Lawrenz he was scheduled to be seen the week of February 15, 2021. (*Id.*)

On February 1, 2021, while Lawrenz was being examined by a nurse for issues with his hand, he followed up on an HSR he submitted complaining about abdominal issues, specifically heartburn, and he reported that he "did not get relief from $CaCO_3$ [calcium carbonate] and asked [ ] for an alternative." (*Id.*, ¶ 73.) The nurse sent Dr. Ribault a message that same day regarding Lawrenz's HSR about his abdominal complaints. (*Id.*, ¶ 74.) Dr. Ribault responded that he would switch Lawrenz to Zantac for heart burn. (*Id.*, ¶ 76.)

Also on February 1, 2021, Lawrenz submitted an HSR stating, "I'm looking for further clarification on CT. If it's the MD's conclusion that there is no plastic in my digestive system, is it his conclusion that I digested it or ? I don't believe it would be possible to pass a spork? Please clarify diagnosis." (*Id.*, ¶ 78.) A nurse responded stating that his diagnosis was constipation and that the CT scan "showed 'no bowel obstruction' but 'a large amount of stool throughout the colon.'" (*Id.*) She also stated, "Who's to say what exactly happened to a

spork that was swallowed 4 years ago?" (*Id.*) She also informed him that he was scheduled for another appointment with Dr. Ribault soon. (*Id.*)

On February 8, 2021, Lawrenz was examined by a nurse in the HSU for complaints of abdominal pain, vomiting, and heartburn. (*Id.*, ¶ 79.) Lawrenz reported that the pain would flare up when he was lying down. (*Id.*) He asked to be given Maalox instead of Miralax for his constipation, and the nurse obliged. (*Id.*) He further stated, "I just don't feel like I'm being taken seriously about how painful this is and I really believe the spork is still there." (*Id.*) The nurse noted that Lawrenz was scheduled to see the doctor next week. (*Id.*)

That same day, Lawrenz submitted an HSR with the request to forward it to Dr. Ribault, stating "This is a written follow up to a conversation I had in person w/ MD. I informed him that I had a CT in 9/16, 7-10 days after ingesting a plastic spork. It showed nothing then directly which means only 2 logical conclusions can be made from that. 1. It was already digested or 2. It didn't show up on image then just like it isn't now. Which is it?" (*Id.*, ¶ 80.) A nurse responded to him noting that he swallowed the object 4 years ago and "[s]afe to say that it should have passed in that amount of time." (*Id.*) Dr. Ribault did not see the HSR. (*Id.*)

Also on February 8, 2021, Lawrenz submitted an HSR that he also requested to be forwarded to Dr. Ribault asking if his heartburn medication could be administered in liquid form and requesting more Tums. (*Id.*, ¶ 81.) The nurse responded that he should take 40 mg of omeprazole for heartburn. (*Id.*)

On February 16, 2021, Dr. Ribault examined Lawrenz and informed Lawrenz that "his recent labs were consistent with an inflammatory process that was likely associated with his uncontrolled central abdominal pain." (*Id.*, ¶ 82.) Lawrenz reported that the pain was

worse when lying down and that he did not have an appetite. He also reported his urine was darker than usual. (*Id.*) Dr. Ribault informed Lawrenz that "he had a pending abdominal study and a consult with gastroenterology to assess the etiology." (*Id.*, ¶ 83.) Lawrenz states he never went to those appointments. (*Id.*)

On March 1, 2021, Lawrenz submitted an HSR asking if his appointment with the gastroenterologist had been scheduled, and the nurse responded that he had an upcoming appointment. (*Id.*, ¶ 85.)

On March 3, 2021, Lawrenz went to Divine Savior Hospital for a second CT scan. (Docket #149, ¶ 44.) Lawrenz states he asked the CT tech what the CT had been ordered for, and they responded, "kidney stones." (Docket #138, ¶ 23.) Lawrenz told the tech that he believed he still had a plastic spork in his digestive system. (*Id.*) The CT tech stated that they would let radiology know. (*Id.*) Lawrenz then returned back to Columbia, and within minutes of his return, he was taken back to HSU and then to the emergency room at Divine Savior Hospital. (Docket #149, ¶ 46.) Lawrenz states that Divine Savior medical staff had informed Dr. Ribault that Lawrenz's CT scan showed he had a foreign body inside him that was causing an infection. (*Id.*, ¶ 47.) As a result, Dr. Ribault had Lawrenz sent back to the ER, where it was discovered that Lawrenz had a large mass in his duodenum. (*Id.*, ¶ 48.) Dr. Ribault then told HSU nursing staff that because Lawrenz had a "raging infection" he needed to be sent to the UW Hospital. (*Id.*, ¶ 49.)

On March 5, 2021, UW medical staff "attempted an endoscopical removal of the spork" but it was unsuccessful. (*Id.*, ¶ 55.) On March 7, 2021, another endoscopical removal was attempted and that also failed. (*Id.*, ¶ 56.) That same day, Lawrenz had surgery to remove the spork. (*Id.*, ¶ 57.) Lawrenz was discharged from the hospital on March 13, 2021. (Docket

#, ¶ 100.) Lawrenz states that upon his return, he made multiple requests for the Imodium AD prescription he was given at the hospital. (Docket # 149, ¶ 58.) The defendants assert that UW hospital discontinued the prescriptions for all medication prior to Lawrenz's release because he was caught abusing medication. (*Id.*; Docket # 179, ¶ 100.)

On March 22, 2021, Lawrenz was seen by a nurse in the HSU for removal of his surgical staples. (Docket # 179, ¶ 101.) Lawrenz notes that his staples were removed days after the recommendation of UW hospital staff, and he continually complained that the staples were "red and irritated." (*Id.*) Dr. Ribault did not meet with or examine Lawrenz after his return from the hospital. (*Id.*) On March 25, 2021, Lawrenz had a follow-up appointment at UW Hospital, and it was observed that Lawrenz was recovering well. (*Id.*, ¶ 104.) It was noted that Lawrenz "continued to have diarrhea, minimal abdominal pain and concerns." (*Id.*)

*Buchanan's Involvement with Lawrenz*

Buchanan states that her only direct interaction with Lawrenz was when she responded to his January 25, 2021, HSR. (*Id.*, ¶ 115.) Otherwise, she was not responsible for scheduling or providing medical care to Lawrenz as her position as Health Services Manager was administerial. (*Id.*, ¶ 107.) Lawrenz asserts that he spoke to Buchanan on September 23, 2020, while she was doing COVID-19 screenings, and he told her about his abdominal pain and that Dr. Ribault was cancelling his appointments. (Docket # 149, ¶ 59.) Lawrenz states that Buchanan told him she would have him seen by Dr. Ribault within the next two days. (*Id.*, ¶ 60.) He then sent an HSR later that night directed to Buchanan reminding her she told him she would have him seen by Dr. Ribault. (*Id.*, ¶ 61.) Lawrenz was not seen within the next two days by Dr. Ribault. (*Id.*, ¶ 62.) On September 30, 2020, Lawrenz again wrote

Buchanan stating that he really needed to see Dr. Ribault because his stomach pain was terrible, and Buchanan never responded. (*Id.* ¶, 66.) Buchanan does not dispute this but notes that she did not receive the HSR and another nurse responded to it. (*Id.*)

Lawrenz further states that Buchanan never responded to emails sent to her by Warden Fuchs and Fink about Lawrenz's health issues. (*Id.*, ¶ 63.) Specifically, when Fink emailed Buchanan that Lawrenz did not go to work because of stomach pain and asked her to "please advise," she never responded. (*Id.*, ¶ 67.) Buchanan states that another member of the HSU staff responded to that email informing Fink that Lawrenz had a CT scheduled for the next day. (*Id.*) Sgt. Kessenick also sent HSU an email about Lawrenz not being seen in the HSU on either September 24 or 25, 2020, which was forwarded to Buchanan. (*Id.*, ¶ 68.) The nurse forwarding the email noted that there was "significant concern" about Lawrenz's pain and asked if she could have him seen in the HSU. (*Id.*, ¶ 69.) Buchanan did not respond to the email, but she notes that Dr. Ribault reviewed Lawrenz's file and placed treatment orders on September 29, 2020. (*Id.*, ¶ 70.)

Buchanan also asserts that she did not have control of scheduling appointments, both with on-site providers including Dr. Ribault and off-site providers. (Docket # 179, ¶ 110.) The Medical Program Assistant-Associate was responsible for scheduling. (*Id.*) As for delays and cancellations of appointments, the defendants assert that the COVID-19 pandemic impacted the availability of appointments and providers. (*Id.*, ¶ 112.)

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

**ANALYSIS**

Lawrenz claims that Dr. Ribault violated his Eighth Amendment rights when he failed to treat him for the spork he swallowed and unnecessarily delayed treatment of his stomach issues.. He also claims that Buchanan unnecessarily delayed treatment of his stomach issues.

*1. Claims Against Dr. Ribault*

A prison official violates the Eighth Amendment where he is deliberately indifferent "to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To demonstrate a claim of deliberate indifference "a plaintiff must show (1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). The condition does not need to be life-threatening to be serious; it needs only to be "a condition that would result in further significant injury or unnecessary and wanton infliction of pain" if not addressed. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

A plaintiff must also prove "that an official *actually* knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." *Id*. The plaintiff must show that the prison official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether they actually exercised professional judgment." *Stallings v. Liping Zhang*, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)).

Lawrenz argues that Dr. Ribault deliberately ignored the fact that the spork was the true cause of his stomach pain. When courts consider "whether [a plaintiff's] medical provider deliberately ignored his health, [it] examine[s] the totality of his medical care." *Miller v.*

*Wexford Health Sources, Inc.*, No. 20-3533, 2022 WL 3928519, at *2 (7th Cir. Aug. 31, 2022) (citing *Petties*, 836 F.3d at 728). "Courts defer to a medical professional's treatment decisions unless no minimally competent professional would have responded the same way." *Id.* (citing *Pyles*, 771 F.3d at 409). Lawrenz asserts that despite repeatedly telling Dr. Ribault about his belief the spork was still inside his digestive system causing the pain, Dr. Ribault refused to consider the spork as the cause of his abdominal pain. Dr. Ribault contends that because Lawrenz had swallowed the spork four years prior and had yet to develop any serious issues from the incident, his decision to pursue other, more conservative avenues of diagnosis and treatment for the stomach pain was within the realm of professional judgment. Opting to pursue a more conservative course of treatment, as long as it is within the bounds of acceptable professional standards, does not amount to deliberate indifference. *See Morehead v. Thompson*, Case No. 23-1907, 2024 WL 658955, at * 2 (7th Cir. Feb. 16, 2024); *Grant v. Heidorn,* 802 Fed. App'x 200, 205 (7th Cir. 2020) (pursuing conservative treatment does not amount to deliberate indifference unless the treatment did not conform to professional standards). A plaintiff must demonstrate that the medical professional's decision to continue conservative treatment "was 'blatantly inappropriate'" and "'no minimally competent professional would have responded similarly under those circumstances.'" *Morehead*, 2024 WL 658955, at * 2 (quoting *Pyles*, 771 F.3d at 409).

Lawrenz produces no such evidence. Taking the facts in a light most favorable to Lawrenz, the evidence shows that Dr. Ribault provided Lawrenz with consistent care from September 29, 2020, through March 3, 2021, when Lawrenz went to the emergency room and ultimately had the spork removed. Within that roughly six-month period, Dr. Ribault ordered an x-ray and an ultrasound of Lawrenz's abdomen, which showed that Lawrenz was

suffering from kidney swelling. Dr. Ribault treated that condition and then immediately ordered a CT scan. The CT scan showed evidence of moderate constipation and an indication that Lawrenz was suffering from small kidney stones, so Dr. Ribault treated those ailments. Lawrenz, however, continued to complain of worsening abdominal pain, so Dr. Ribault ordered a second CT scan, which ultimately resulted in the correct diagnosis. This is not an instance where Dr. Ribault "persisted with a course of treatment they knew to be ineffective." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020). Instead, he ordered more tests and adjusted recommended treatment because Lawrenz was still complaining of stomach pain after his other ailments were treated..

Lawrenz also argues that Dr. Ribault was deliberately indifferent when he failed to indicate on the orders for the x-ray, ultrasound, and CT scan, that Lawrenz could potentially have a plastic spork in his digestive system. As explained above, Dr. Ribault's opinion that it was unlikely the spork was the source of Lawrenz's pain was not blatantly inappropriate. It follows, then, that his decision to not explicitly request the radiologists look for a plastic spork was not blatantly inappropriate. This is not a situation where the medical provider failed to order a diagnostic test. *See Pyles*, 771 F.3d at 412 (where the need for "specialized expertise" would have been obvious to a lay person, the "obdurate refusal to engage specialists permits an inference that a medical provider was deliberately indifferent"). Once again, he ordered several.

Additionally, because Dr. Ribault sought the assistance of radiologists in diagnosing Lawrenz's stomach pain, he is entitled to accept their observations, opinions, and conclusions unless it is obvious that those observations, opinions, and conclusions were "blatantly inappropriate." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 462–63 (7th Cir. 2020).

There is nothing in the record suggesting that the radiologist's professional opinions were blatantly inappropriate.

Further, the fact that other medical professionals were unable to conclude over a four-year period that the spork was the source of Lawrenz's abdominal pain corroborates the reasonableness of Dr. Ribault's professional medical decisions. Indeed, Lawrenz noted in his February 8, 2021 HSR that the spork did not show up on the CT scan he had 7-10 days after ingesting the spork. (Docket # 179, ¶ 80.)

Lawrenz further argues that Dr. Ribault was deliberately indifferent because he consistently cancelled appointments, thus delaying his treatment. "[A]n inexplicable delay in treatment which serves no penological interest" can amount to deliberately indifference. *Petties*, 836 F.3d at 730. To demonstrate such a delay, a plaintiff must "provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Id.* at 730–31. "[D]elays are common in the prison setting with limited resources, and whether the length of the delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 730.

Lawrenz does not demonstrate that the delays in care were inexplicable and without penological interest. These events took place during the COVID-19 pandemic, where even non-prisoners were experiencing significant delays in medical care in the interest of protecting the public's health and safety. COVID-19 was the cause of many delays in both on-site and off-site provider appointments during 2020 and 2021. COVID-19 also caused staff shortages and institutional lockdowns, which Lawrenz noted would impact when he received healthcare.

Also, while COVID-19 and the related impact of the pandemic may have delayed Lawrenz's ability to be examined in person by Dr. Ribault, the undisputed evidence shows that Lawrenz still received adequate care. Between first reporting his stomach issues to Columbia staff on August 28, 2020, to first seeing Dr. Ribault on October 27, 2020, Dr. Ribault reviewed Lawrenz's medical records and made treatment decisions. Lawrenz also had an x-ray and an ultrasound. Additionally, during that time period, Lawrenz was examined by nursing staff. Indeed, the undisputed record shows that Lawrenz had several in-person exams by HSU staff between September 2020 and March 2021.

Lawrenz also provides no evidence that the delays in seeing Dr. Ribault or delays in receiving his CT scans worsened his condition. Up until the beginning of March 2021, the undisputed evidence shows that Lawrenz's pain remained relatively stable—not worsening but not getting better. When Lawrenz's lab test results began to show signs of infection on February 16, 2021, Dr. Ribault ordered an abdominal study and a consultation with a GI specialist. (Docket # 179, ¶¶ 82–83.) Lawrenz ultimately did not go to those appointments because when his condition started to worsen on March 3, 2021, he ended up in the emergency room and then at UW Hospital where the spork was removed. Once Lawrenz's condition declined, Dr. Ribault adjusted his treatment and successfully addressed the issue.

No reasonable factfinder could conclude that Dr. Ribault's actions departed significantly from accepted professional standards. Nor could a reasonable factfinder conclude that the delays Lawrenz experienced exacerbated his condition or needlessly prolonged his pain. As such, no reasonable factfinder could conclude that Dr. Ribault was deliberately indifferent. Summary judgment is granted in his favor.

*2. Claim Against Buchanan*

Lawrenz argues that Buchanan treated his abdominal pain with deliberate indifference because she did not ensure that he was receiving timely care. As demonstrated above, the delays Lawrenz experienced did not rise to the level of a constitutional violation. Thus, even when taking the facts in a light most favorable to Lawrenz, he fails to demonstrate a deliberate indifference claim against Buchanan. Lawrenz asserts that Buchanan should have ensured that Dr. Ribault examined him after he talked with her on September 23, 2020, because she stated that she would have him seen within the next two days. (Docket # 139, ¶¶ 59–61.) While it is undisputed that Dr. Ribault did not examine Lawrenz within the next two days, it is also undisputed that Lawrenz was examined by HSU staff on September 29, 2020, and Dr. Ribault reviewed his chart on September 29, 2020, and made treatment recommendations.

Lawrenz also argues that Buchanan was deliberately indifferent because she did not properly respond to written complaints from both him and other prison staff about lack of care. Again, because Lawrenz cannot demonstrate that the delays rose to a level of a constitutional violation, he does not prove a claim against Buchanan. Additionally, Lawrenz provides no evidence demonstrating that Buchanan was responsible for scheduling appointments, thus she cannot be held liable for failing to timely schedule appointments. "Public officials do not have a free-floating obligation to put things to rights . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

Because Lawrenz fails to demonstrate that the delays he experienced rose to the level of a constitutional violation and because he fails to prove that Buchanan had responsibility over scheduling, no reasonable factfinder could conclude that Buchanan was deliberately

indifferent to Lawrenz's abdominal pain. Summary judgment is granted in her favor.*3.*

*3. State Law Claim*

At screening, the court exercised supplemental jurisdiction over Lawrenz's medical malpractice claim under Wisconsin state law. Now that the court has granted summary judgment in favor of defendants and dismissed the federal claims, the court declines to continue to exercise that jurisdiction. *See* 28 U.S.C. §1367(c); *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015).

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted and Lawrenz's motion for summary judgment is denied. The defendants also argued that they are entitled to qualified immunity. Because the court found in their favor on the merits, however, this argument need not be addressed. As there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (Docket # 131) is **GRANTED**.

**IT IS FURTHER ORDERED** that Lawrenz's motion for summary judgment (Docket # 135) is **DENIED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3,

4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 28th day of September, 2026.

BY THE COURT:



NANCY JOSEPH
United States Magistrate Judge